UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COMPASSUS OP OF MISSOURI, LLC, d/b/a COMPASSUS HOSPICE AND PALLIATIVE CARE – ST. LOUIS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:18 CV 1942 CDP |
| ALEX M. AZAR II, in his official capacity as Secretary of the United States Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Compassus OP of Missouri, LLC (doing business as Compassus Hospice and Palliative Care – St. Louis) seeks a Temporary Restraining Order preventing the Secretary of the Department of Health and Human Services from terminating its Medicare Provider Agreement. As stated on the record at the hearing held earlier today, I have considered all the evidence and arguments submitted by the parties and will deny the Motion for Temporary Restraining Order.

Under the familiar *Dataphase* test, a plaintiff seeking a Temporary Restraining Order must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of relief, that the balance of equities

favors the relief sought, and that granting the request is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981).

The parent company of Compassus St. Louis operates more than 30 hospice agencies in the Midwest, including approximately 15 in Missouri. Each of those hospices is a separate LLC and has a separate Medicare provider agreement. Following an investigation of several Compassus facilities in other Missouri and Kansas locations, defendant initiated an investigation into the care at Compassus St. Louis. A "survey" (the Medicare term for an inspection) conducted on September 28, 2018, determined that Compassus St. Louis had failed to meet care standards and had placed patients in "immediate jeopardy" (as defined in 42 C.F.R. § 488.1 and other applicable regulations). On October 4, 2018, the Center for Medicare and Medicaid Services (CMS) notified plaintiff that its Provider Agreement would be terminated, effective October 27, 2018.

The October 4 notice of termination letter stated that CMS had determined that "the deficiencies … are so serious they constitute an immediate threat to patient health and safety." With regard to the termination date, the notice stated that Medicare would not pay for any services for patients admitted to care on or after October 27, 2018. It also stated, "For patients admitted prior to October 27, 2018, payment may continue to be made for up to 30 days of services furnished after" that date. It also stated that Compassus St. Louis could submit a "plan of correction"

before October 9. On October 12 CMS notified plaintiff that its "plan of correction" was not accepted.

On October 26, 2018, CMS notified plaintiff that an additional survey conducted that day had shown that deficiencies continued to exist, but that the termination date was being extended. On November 6, 2018, CMS sent a "FINAL NOTICE: MEDICARE TERMINATION" letter stating that the provider agreement would be terminated effective November 22. It included the same language explaining that this meant no Medicare payments would be made for patients admitted to care on or after November 22, but that payments for patients admitted before that date would continue for up to 30 days after the termination date.

On Friday, November 16, Compassus St. Louis formally requested a hearing before an Administrative Law Judge and also filed this case. It asked the Court to set a hearing on its Motion for Temporary Restraining Order for Tuesday, November 20. I set the hearing for the requested date, and held a telephone conference with counsel for both sides on Monday, November 22. Because of the Thanksgiving holiday and the schedules of all involved, defendant and plaintiff agreed that the temporary restraining order hearing could be continued until

November 27, 2018, and the termination date would be extended until November 29, 2018.[1]

Compassus St. Louis's complaint raises claims of due process violations (on behalf of both Compassus St. Louis and its patients) and arbitrary and capricious agency action. It argues that it is likely to succeed on the merits because the agency failed to consider all appropriate factors in determining that an "immediate jeopardy" situation existed. It asserts that its and its patients' property and liberty interests will be damaged and that due process involves the fundamental requirement for a pre-termination hearing. Although plaintiff's counsel acknowledged at the hearing that the law and regulations do not provide for a pre-termination hearing, counsel explained that plaintiff is not arguing that such a hearing is always required, but that the facts of this case are extremely unusual.

Plaintiff argues that it will prevail at its hearing before the Administrative Law Judge but that because that hearing will not take place until long after the termination of the Participant Agreement, "such a victory would be pyrrhic." It argues that allowing termination before a hearing deprives it of the right to any meaningful judicial review. Compassus argues that it and its patients will suffer irreparable harm because the patients and their families will be forced to find

---

[1] Because of the request for immediate relief, the short notice, and the pending termination, the Court is treating the motion as one for a Temporary Restraining Order under Rule 65(b), rather than as a motion for a Preliminary Injunction, even though defendant received notice and participated in the hearing.

4

alternative hospice providers and there are a limited number of Medicare-qualified hospices. It argues that it will be required to cease operations and terminate its 32 employees during this holiday period. It further argues that defendant will not be harmed by postponing the termination until after the as-yet to be scheduled ALJ hearing and that the public interest favors injunctive relief because of the need to provide critical care for the hospice patients.

Compassus St. Louis has not shown that it is likely to succeed on the merits of its claim. First, I have strong doubts about whether I even have jurisdiction to hear the claim. However, because the Secretary's motion challenging jurisdiction was only filed yesterday and so has not been fully briefed, and because Compassus St. Louis asserts the need for immediate relief and also asks for an opportunity to brief the jurisdictional motion, I will consider the merits further. I note, however, that there is overlap between the factors relevant to the jurisdictional issues and those relevant to the due process claim.

The Medicare law and the Provider Agreement do not provide for pre-termination hearings in this situation. Even if Compassus has a property interest in its continued participation in the Medicare program, and even if its patients have a due process interest in continuing care with Compassus, and even if Compassus can assert the due process interests of its patients, due process does not require a pre-termination hearing in every conceivable situation where a government terminates

5

payments to a citizen. Although Compassus argues that this case is very unusual, the defendant presented evidence that other hospice provider agreements have been terminated on similar notice and for similar reasons. At the hearing Compassus could not support its claim of "unusual" except to argue that the CMS determination was wrong and that it should have been given more opportunities to cure any deficiencies.

Compassus St. Louis is asking this Court to determine factual issues regarding compliance with patient care standards and regulations, which are some of the same factual issues that will be considered by the Administrative Law Judge. These are precisely the issues that the statute and regulations commit to agency determination. Compassus argues that because the "administrative record" in this case is "thin," it has shown a colorable due process violation, but that is merely another invitation to consider the merits of its dispute with CMS. In any event, I cannot say that the deficiencies set out in the September 28 and October 26 surveys, on which CMS based its decision, are so obviously wrong that there must be a colorable due process violation. For all the above reasons, I conclude that Compassus has not shown that it is likely to succeed on the merits.

Compassus St. Louis has also not shown that it or its patients will suffer irreparable harm if the termination is allowed to happen. To the extent it argues that it will be put out of business because 100% of its revenues come from the Medicare

6

program, that is a risk that it obviously chose to take when it voluntarily signed up for the Medicare program and structured its business in the way it did. Nothing in the law or regulations provides that there can never be a termination, and any provider who relies on Medicare payments for all of its revenue is facing the same risk. Compassus St. Louis is not without any remedy at law, nor is it without any right to judicial review. If it fails to prevail before the Administrative Law Judge, it will have the right to then file suit challenging that determination.

Compassus has also failed to show that its patients will be irreparably harmed if the injunction is not issued. Compassus St. Louis provides hospice services to patients in the locations where the patients live, which usually means in their homes or in a skilled nursing facility. Thus there is no reason that any hospice patients would be required to be physically moved to a different facility because of the termination. Compassus will have 30 days where it will be paid for continuing to care for its existing patients until they find alternative hospice programs. Although I do not doubt that changing hospice providers is problematic for hospice patients and their family members, Compassus itself can minimize this harm if it assists its patients in the transition in a compassionate way. Of course, many hospice patients are already suffering significant distress by virtue of their conditions, but this does not mean that no changes to their care can ever take place. To the extent Compassus argues that the patients may not be able to find alternative providers,

7

defendant provided evidence that there are other hospice providers in the St. Louis area that are qualified Medicare providers.

To the extent Compassus argues that its employees will be irreparably harmed, defendant rebutted that argument by presenting evidence that the various Compassus hospices often share staff and that the parent company is advertising to hire employees in many positions, so it is not at all clear that all of the employees must be terminated. Compassus has not shown that it will be irreparably harmed if the Retraining Order is not granted.

The balance of harms is difficult to evaluate on this record. Defendant argues that the CMS agency will be disrupted and the government may be forced to pay for inferior services. Plaintiff argues that the defendant will not be harmed at all. The harms to the patients depends on the merits of whether Compassus St. Louis was, in fact providing sub-standard care. Compassus St. Louis, as the party seeking extraordinary injunctive relief, has the burden of showing that this factor favors relief, and it has failed to do so.

Finally, the public interest also depends partly on the merits of the case, and so is also difficult to evaluate. The public interest always favors the law being followed, and favors taxpayer dollars being used as intended by Congress. It also favors patients receiving quality hospice and other medical care, and receiving the Medicare benefits to which they are entitled. Again, given that the burden is on

Compassus St. Louis, this element has not been shown to favor granting emergency relief.

Accordingly and for all the above reasons,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Temporary Restraining Order [2] is denied.

                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE

Dated this 27th day of November, 2018.